UNITED STATES FASTENER CO. v. CÆSAR et al.

(Circuit Court of Appeals, Second Circuit.   March 13, 1908.)

No. 174.

PATENTS—INFRINGEMENT—SEPARABLE BUTTON.

The Pringle patent, No. 720,616, for the stud member of a separable button or fastener, construed, and *held* not infringed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 154 Fed. 671.

Appeal from a decree of the Circuit Court in favor of the complainant in a suit charging the infringement of a patent.

Stephen J. Cox (William R. Baird, of counsel), for appellants.

John P. Bartlett and Thomas W. Bakewell, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

NOYES, Circuit Judge.   The patent in suit, for an improvement in studs, is No. 720,616, and was granted February 17, 1903, to the complainant as assignee of Eugene Pringle.

The patentee thus states the nature and object of his invention:

"My invention relates to studs for separable buttons or fasteners—such, for instance, as are employed on gloves and other articles of apparel; and it consists of structural improvements in the stud member of such fasteners.

"The object of my invention is to provide means whereby a stud member of a stud-and-socket fastener adapted to engagement with a complemental socket may be secured in place upon the fabric, leather, or what not by means of an eyelet, of which the barrel passes through the fabric, enters the stud, and is upset or clinched within the stud itself to form a fastening-flange on the barrel by means of a turning-piece or deflector contained within the body of the stud, which deflector by contact with the eyelet-barrel determines the direction and degree of its deflection as the eyelet and stud on opposite sides of the fabric are forced together by means of a suitable tool or press."

The claims of the patent—all of which it is contended that the defendants infringe—follow:

"1. In a member of a stud-and-socket fastener, a stud, comprising a head, an engaging groove below the head, and a flange below the groove, an eyelet-turning piece within the stud, and an eyelet to attach the stud to material, having its tubular portion passed through the material and upset against the eyelet-turning piece.

"2. In a member of a stud-and-socket fastener, the combination of a hollow grooved stud seated on one side of material, a fastening-eyelet therefor, seated on the opposite side of the material and having its stem projected through the material into the stud, and a binding piece, secured to the stud and having a central tubular portion entering the stud and surrounding the stem of the eyelet.

"3. In a member of a stud-and-socket fastener, the combination of a hollow stud, having a head, a base, a groove between the head and base, the stud and base slitted radially, an eyelet-turning piece within the stud, a binding-piece confining the slitted base, and an eyelet, inserted in the stud from below, and upset against the eyelet-turning piece."

The following cuts taken from the defendants' brief and enlarged from drawings in the patent make the nature of the invention clear

and are so marked as to be self-explanatory; the first illustration showing the structure covered by claims 1 and 3, and the second that specified in claim 2:

### CLAIMS 1 AND 3.

### CLAIM 2.

The Circuit Court held the patent valid and infringed in all its claims. Upon this appeal we shall consider the questions in their inverse order. If no infringement be found, consideration of the other questions will be unnecessary.

In examining a question of infringement, the primary inquiry is whether every element of a claim is found in the device complained of. If any element, or an equivalent therefor be lacking, there is no infringement. Taking up claims 1 and 3, we find that a material element of each is the "eyelet-turning piece within the stud." The device as

shown in the above illustrations, as well as in all the drawings of the patent, is separate and distinct from the head of the stud in which it is located; in some illustrations being in the form of a conical bullet and in others in that of a ball. Moreover, complainant's counsel urge that it is so separate from the stud, saying:

"We hardly need point out that the claims when read in the light of the drawings could only have this meaning."

In fact—as they also show—a sharp distinction was drawn in the proceedings in the Patent Office between an eyelet-turning piece and an eyelet-turning surface, thus indicating, using their language, "that an eyelet-turning piece separate and distinct from the stud itself was of importance." And it certainly is very clear that what the patentee desired to embrace within his patent was a separate and distinct turning piece; e. g., a bullet or ball shaped piece, and not a turning surface in the post or head into which the eyelet was introduced. Whether the patentee desired this on account of supposed mechanical advantages or to avoid earlier patents—e. g., the Platt patent of 1876 which covered a stud with an eyelet-turning surface—does not appear. The suggestion of the complainant, however, that this requirement of a separate turning piece had its basis in a desire to provide for a resilient stud finds little support in the patent. In all the 10 illustrations of the patent the stud shown is rigid, and adapted to be used with spring sockets only. It is true that the inventor, having stated that the base of the stud might be slitted in order to facilitate the insertion of the eyelet-turning piece, also says:

"The slits continued into the bulb shaped head of the stud, A, will lend it that resiliency which is common to several forms of studs used prior to this invention."

But this is stated rather as a possible incidental use of slits primarily designed for another purpose than as a material factor in the invention. In fact, the method of fastening the stud to the fabric was what the inventor was concerned with. He illustrated his invention with rigid, and apparently gave little consideration to spring studs. We see nothing to indicate that the adoption of the separate turning piece had any connection with the use of a resilient stud.

We may say, moreover, in this connection that the proof is not satisfactory that continuing the slits further up into the stud—as suggested in the patent—would produce a workable spring stud. The stud of the patent must necessarily be rigid to an extent. It must tightly hold the turned eyelet. It is also made somewhat rigid by the pressure of the eyelet-turning piece. Flexibility seems inconsistent with its functions. Undoubtedly some spring could be obtained from slits, but nothing like that of the "bird cage" structure—which we will consider later—would be possible. In fact, what spring could be obtained is wholly a matter of surmise, for no one, so far as appears, ever attempted to carry out the inventor's suggestion.

We come now to the inquiry whether the element of claims 1 and 3 —the separate eyelet-turning piece—is found in the defendants' struc-

ture. The following cut taken from the defendants' brief (that in complainant's brief being similar in its essentials) illustrates the construction of the defendants' device, the lettering being ours:

## DEFENDANTS.

A represents the external spring which engages with the socket, and is called in the testimony a "bird cage." B is the hollow post which directly engages with the eyelet barrel, C. D is the base of the post. E is a binding piece for attaching the "bird cage," A. F represents the feet of the "bird cage." When the eyelet barrel, C, is forced into the hollow post, B, it is turned 'and clinched by the interior surface of the post, and the stud is thereby secured to the fabric. The complainant urges that the external spring of the defendants' device is the stud proper of the claims of the patent, and that the post, B, being within it and separate from it and having a convex head to turn the eyelet, is "the eyelet-turning piece within the stud." On the other hand, the defendants contend that the post, B, is the stud proper, that the external spring is merely an appendage to the stud, and, consequently, that there is no separate and distinct turning piece within it. How the word "stud" shall be used in comparing the structures is therefore important. But two structures cannot be compared unless the same word is used to designate the same thing in each. And, if the same term is applied to the same thing in each structure, it is of little importance whether its use is technically correct. The question is one of things rather than of words—whether the device of the patent is found in the alleged infringing structure. Broadly speaking, the whole structure of the patent is the stud—"the stud member of a stud-and-socket fastener." But, when the inventor speaks of the stud in the claims in connection with the eyelet-turning piece, he has reference to that portion of the stud member which receives the eyelet. He very properly designates this hollow post as a stud. It is the only thing shown in the patent which could be so designated. But, in case the inventor had provided in some of his drawings for an external spring or cage, there would have been no reason for a change in terms. The rigid stud would still have been the stud proper. Therefore, in determining whether the defendants' structure possesses a separate and distinct

"eyelet-turning piece within the stud," we should properly apply the word "stud" to the same thing the patent applies it to—the post which receives the eyelet barrel.

Stated in a different way: Any fair comparison of stud members should involve the comparison between two rigid studs or two resilient studs. There should be a common form. The complainant's expert testifies that the defendants' structure without the "bird cage" would be a practical rigid stud. Compared in this form it is evident that the post, B, is the stud proper corresponding to the stud proper of the patent. On the other hand, it is undoubtedly practicable to attach an external spring to the structure of the patent. Compared in this form, the post of the patent would correspond to the post of the defendants' structure, and both would properly be designated the stud proper. All the force of the complainant's argument lies in the application of the same term to different things. The defendants' structure having an external spring or cage, it is possible to designate that as the stud, and thereby call that which corresponds to the stud of the patent, and which has an interior turning surface, "an eyelet-turning piece within the stud."

But: (1) The defendants' structure minus the outside cage does not infringe. This is obvious and is admitted by the complainant's expert. (2) The external spring or cage does not infringe. The patent shows nothing like it. Therefore we cannot here find infringement produced by uniting that which does not infringe to that which not only does not infringe, but is wholly outside, the patent. The charge of infringement with respect to claims 1 and 3 is not sustained.

The remaining inquiry is whether claim 2 is infringed. A material element of this claim, according to both sides, is a "binding piece secured to the stud and having a central tubular portion entering the stud and surrounding the stem of the eyelet." Consequently claim 2 is not infringed unless this element is found in the defendants' device. The second cut taken from the patent and shown above illustrates the structure of this claim. In this structure—unlike that shown in the first cut—the eyelet barrel is turned and clinched at a point considerably above the base of the stud. This is accomplished by the central tubular portion of the binding piece. The eyelet barrel, instead of engaging directly with the stud when clinched, is engaged by this structure, which by surrounding it and affording a long support takes upon itself much of the strain. But, however meritorious this device may be, there is nothing corresponding to it in the defendants' structure. The complainant's contention that the post of the defendants' device, in connection with the separate binding piece securing the external spring, is equivalent to a binding piece having a central tubular portion entering the stud, is practically disposed of by the conclusions already reached. The post of the defendants' structure is the stud itself. It is not a tubular portion of the binding piece entering the stud. And, even if it were not properly designated as the stud, it could not be considered a part of the binding piece, which is separate and distinct from it. Claim 2 is not infringed.

The decree of the Circuit Court is reversed, with costs, and the cause remanded, with instructions to dismiss the bill, with costs.